**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| STATE OF ILLINOIS, | ) | |
| | ) | |
| STATE OF COLORADO, | ) | |
| | ) | |
| and | ) | |
| | ) | Civil Action No:  10-cv00846 |
| STATE OF INDIANA, | ) | Judge:  Henry H. Kennedy, Jr. |
| | ) | Filed: |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMC ENTERTAINMENT HOLDINGS, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KERASOTES SHOWPLACE | ) | |
| THEATRES, LLC, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## FINAL JUDGMENT

WHEREAS, Plaintiffs, United States of America, State of Illinois, State of Colorado, and

State of Indiana, filed their Complaint on May 21, 2010, the Plaintiffs and Defendants, AMC

Entertainment Holdings, Inc. ("AMC") and Kerasotes Showplace Theatres, LLC ("Kerasotes"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendants to assure that competition is not substantially lessened;

AND WHEREAS, Plaintiffs require Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the Plaintiffs that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. **Jurisdiction**

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. **Definitions**

As used in this Final Judgment:

A.     "Acquirer" or "Acquirers" means the entity or entities to which AMC divests the Divestiture Assets.

B.     "AMC" means defendant AMC Entertainment Holdings, Inc., a Delaware corporation with its principal place of business in Kansas City, Missouri, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.     "Kerasotes" means defendant Kerasotes Showplace Theatres, LLC, a Delaware corporation with its principal place of business in Chicago, Illinois, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D.     "Landlord Consent" means any contractual approval or consent that the landlord or owner of one or more of the Divestiture Assets, or of the property on which one or more of the Divestiture Assets is situated, must grant prior to the transfer of one of the Divestiture Assets to an Acquirer.

E.     "Divestiture Assets" means the following theatre assets:

|   | Theatre | Address |
|---|---------|---------|
| 1 | AMC Cantera 30 | 28250 Diehl Road, Warrenville, IL, 60555 |
| 2 | Kerasotes Showplace 12 (Bolingbrook) | 1221 West Boughton Road, Bolingbrook, IL 60440 |
| 3 | Kerasotes Glen 10 | 1850 Tower Drive, Glenview, IL 60026 |
| 4 | AMC Gardens 13 | 4999 Old Orchard Shopping Center, Skokie, IL 60077 |

| 5 | Kerasotes Colony Square 12 | 1164 West Dillon Road Louisville, CO 80027 |
|---|---|---|
| 6 | Kerasotes Olde Town 14 | 5550 Wadsworth Boulevard Arvada, CO 80002 |
| 7 | Kerasotes Showplace 12 (Glendale 10)  **OR**  AMC Castleton Square 14 | 6102 N. Rural Street Indianapolis, IN 46220  6020 East 82nd Street Indianapolis, IN 46250 |
| 8 | AMC Greenwood 14 | 461 South Greenwood Park Drive, Greenwood, IN 46142 |

The term "Divestiture Assets" includes:

1. All tangible assets that comprise the business of operating mainstream theatres that exhibit first-run, commercial movies, including, but not limited to real property and improvements, research and development activities, all equipment, fixed assets, and fixtures, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used in connection with the Divestiture Assets; all licenses, permits, and authorizations issued by any governmental organization relating to the Divestiture Assets; all contracts (including management contracts), teaming arrangements, agreements, leases, commitments, certifications, and understandings relating to the Divestiture Assets, including supply agreements; all customer lists (including loyalty club data at the option of the Acquirer(s), copies of which may be retained by AMC at its option), contracts, accounts, and credit records; all repair and performance records and all other records relating to the Divestiture Assets;

2. All intangible assets used in the development, production, servicing, and sale of the Divestiture Assets, including, but not limited to all patents, licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, technical

-4-

information, computer software (except Defendants' proprietary software) and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all research data concerning historic and current research and development relating to Divestiture Assets, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees, and all research data concerning historic and current research and development efforts relating to the Divestiture Assets; provided, however, that this term does not include assets that the Defendants do not own or that AMC is not legally able to transfer.

### III. Applicability

A.      This Final Judgment applies to AMC and Kerasotes, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an agreement from the acquirers of the assets divested pursuant to this Final Judgment.

### IV. Divestitures

A.      AMC is ordered and directed, within sixty (60) calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment

by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to one or more Acquirer(s) acceptable to the United States in its sole discretion (after consultation with the State of Illinois, the State of Colorado, and the State of Indiana, as appropriate). The United States, in its sole discretion, may agree to one or more extensions of this time period, and shall notify the Court in such circumstances. AMC agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      In accomplishing the divestitures ordered by this Final Judgment, AMC promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. AMC shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. AMC shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine. AMC shall make available such information to the Plaintiffs at the same time that such information is made available to any other person.

C.      AMC shall provide the Acquirer(s) and the United States information relating to the personnel involved in the operation of the Divestiture Assets to enable the Acquirer(s) to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer(s) to employ any Defendant employee whose primary responsibility is the operation of the Divestiture Assets.

D.      AMC shall permit prospective Acquirer(s) of the Divestiture Assets to have

reasonable access to personnel and to make inspections of the physical facilities of the Divestiture

Assets; access to any and all environmental, zoning, and other permit documents and information;

and access to any and all financial, operational, or other documents and information customarily

provided as part of a due diligence process.

E.      AMC shall warrant to Acquirer(s) of the Divestiture Assets that each asset will be

operational on the date of sale.

F.      Defendants shall not take any action that will impede in any way the permitting,

operation, or divestitures of the Divestiture Assets.  At the option of the Acquirer(s), AMC shall

enter into an agreement for products and services, such as computer support services, that are

reasonably necessary for the Acquirer(s) to effectively operate the Divestiture Assets during a

transition period.  The terms and conditions of any contractual arrangements meant to satisfy this

provision must be commercially reasonable for those products and services for which the

agreement is entered and shall remain in effect for no more than three months, absent approval of

the United States, in its sole discretion (after consultation with the State of Illinois, the State of

Colorado, and the State of Indiana, as appropriate).

G.      AMC shall warrant to the Acquirer(s) that there are no material defects in the

environmental, zoning, or other permits pertaining to the operation of each asset.  Following the

sale of the Divestiture Assets, Defendants will not undertake, directly or indirectly, any challenges

to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

H.      Unless the United States (after consultation with the State of Illinois, the State of

Colorado, and the State of Indiana, as appropriate) otherwise consents in writing, the divestitures

made pursuant to Section IV, or by trustee appointed pursuant to Section V of this Final

Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as

to satisfy the United States, in its sole discretion (after consultation with the State of Illinois, the

State of Colorado, and the State of Indiana, as appropriate) that the Divestiture Assets can and will

be used by the Acquirer(s) as part of a viable, ongoing business of operating mainstream theatres

that exhibit first-run, commercial movies. Divestitures of the Divestiture Assets may be made to

one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of

the United States (after consultation with the State of Illinois, the State of Colorado, and the State

of Indiana, as appropriate) that the Divestiture Assets will remain viable and the divestitures of

such assets will remedy the competitive harm alleged in the Complaint. The divestitures, whether

pursuant to Section IV or Section V of this Final Judgment,

(1)     shall be made to Acquirers that, in the United States' sole judgment

(after consultation with the State of Illinois, the State of Colorado,

and the State of Indiana, as appropriate) have the intent and

capability (including the necessary managerial, operational,

technical, and financial capability) of competing effectively in the

business of mainstream theatres exhibiting first-run, commercial

movies; and

(2)     shall be accomplished so as to satisfy the United States, in its sole

discretion (after consultation with the State of Illinois, the State of

Colorado, and the State of Indiana, as appropriate) that none of the

terms of any agreement between Acquirers and Defendants give the

ability unreasonably to raise the Acquirers' costs, to lower the

Acquirers' efficiency, or otherwise to interfere in the ability of the

Acquirers to compete effectively.

## V. <u>Appointment of Trustee</u>

A.      If AMC has not divested the Divestiture Assets within the time period specified in

Section IV(A), AMC shall notify the United States of that fact in writing.  Upon application of the

United States, the Court shall appoint a trustee selected by the United States and approved by the

Court to effect the divestitures of the Divestiture Assets.

B.      After the appointment of a trustee becomes effective, only the trustee shall have the

right to sell the Divestiture Assets.  The trustee shall have the power and authority to accomplish

the divestitures to Acquirer(s) acceptable to the United States (after consultation with the State of

Illinois, the State of Colorado, and the State of Indiana, as appropriate) at such price and on such

terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of

Sections IV, V, VI, and VII of this Final Judgment, and shall have such other powers as this Court

deems appropriate.  Subject to Section V(D) of this Final Judgment, the trustee may hire at the

cost and expense of AMC any investment bankers, attorneys, or other agents, who shall be solely

accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the

divestiture.

C.      Defendants shall not object to a sale by the trustee on any ground other than the

trustee's malfeasance.  Any such objections by Defendants must be conveyed in writing to the

United States and the trustee within ten (10) calendar days after the trustee has provided the notice

required under Section VII.

D.     The trustee shall serve at the cost and expense of AMC, on such terms and

conditions as the United States approves, and shall account for all monies derived from the sale of

the assets sold by the trustee and all costs and expenses so incurred.  After approval by the Court

of the trustee's accounting, including fees for its services and those of any professionals and

agents retained by the trustee, all remaining money shall be paid to AMC and the trust shall then

be terminated.  The compensation of the trustee and any professionals and agents retained by the

trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee

arrangement providing the trustee with an incentive based on the price and terms of the

divestitures and the speed with which it is accomplished, but timeliness is paramount.

E.     Defendants shall use their best efforts to assist the trustee in accomplishing the

required divestitures.  The trustee and any consultants, accountants, attorneys, and other persons

retained by the trustee shall have full and complete access to the personnel, books, records, and

facilities of the business to be divested, and Defendants shall develop financial and other

information relevant to such business as the trustee may reasonably request, subject to reasonable

protection for trade secret or other confidential research, development, or commercial

information.  Defendants shall take no action to interfere with or to impede the trustee's

accomplishment of the divestitures.

F.     After its appointment, the trustee shall file monthly reports with the parties and the

Court setting forth the trustee's efforts to accomplish the divestitures ordered under this Final

Judgment.  To the extent such reports contain information that the trustee deems confidential,

such reports shall not be filed in the public docket of the Court.  Such reports shall include the

name, address, and telephone number of each person who, during the preceding month, made an

-10-

offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestitures, (2) the reasons, in the trustee's judgment, why the required divestitures have not been accomplished, and (3) the trustee's recommendations.  To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. Landlord Consent

A.      If AMC is unable to effect the divestitures required herein due to the inability to obtain the Landlord Consent for any of the Divestiture Assets, AMC shall divest alternative theatre assets that compete effectively with the theatres for which the Landlord Consent was not obtained.  The United States shall, in its sole discretion (after consultation with the State of Illinois, the State of Colorado, and the State of Indiana, as appropriate) determine whether such theatre assets compete effectively with the theatres for which landlord consent was not obtained.

-11-

B.      Within five (5) business days following a determination that Landlord Consent cannot be obtained for the Divestiture Assets, AMC shall notify the United States and propose an alternative divestiture pursuant to Section VI(A).  The United States shall have then ten (10) business days in which to determine whether such theatre assets are a suitable alternative pursuant to Section VI(A).  If AMC's selection is deemed not to be a suitable alternative, the United States shall in its sole discretion select the theatre assets to be divested (after consultation with the State of Illinois, the State of Colorado, and the State of Indiana, as appropriate).

C.      If the trustee is responsible for effecting the divestitures, it shall notify both the United States and AMC within five (5) business days following a determination that Landlord Consent cannot be obtained for the Divestiture Assets.  AMC shall thereafter have five (5) business days to propose an alternative divestiture pursuant to Section VI(A).  The United States shall have then ten (10) business days in which to determine whether such theatre assets are suitable alternative pursuant to Section VI(A).  If AMC's selection is deemed not to be a suitable competitive alternative, the United States shall in its sole discretion select the theatre assets to be divested (after consultation with the State of Illinois, the State of Colorado, and the State of Indiana, as appropriate).

## VII. Notice of Proposed Divestitures

A.      Within two (2) business days following execution of a definitive divestiture agreement, AMC or the trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States (and, as appropriate, the State of Illinois, the State of Colorado, and the State of Indiana), of any proposed divestitures required by Sections IV or V of this Final Judgment.  If the trustee is responsible, it shall similarly notify Defendants.  The

notice shall set forth the details of the proposed divestitures and list the name, address, and

telephone number of each person not previously identified who offered or expressed an interest in

or desire to acquire any ownership interest in the Divestiture Assets, together with full details of

the same.

B.      Within fifteen (15) calendar days of receipt by the United States (the State of

Illinois, the State of Colorado, and the State of Indiana) of such notice, the United States may

request from Defendants, the proposed Acquirer(s), any other third party, or the trustee, if

applicable, additional information concerning the proposed divestitures, the proposed Acquirer(s),

and any other potential Acquirer(s).  Defendants and the trustee shall furnish any additional

information requested within fifteen (15) calendar days of the receipt of the request, unless the

parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20)

calendar days after the United States has been provided the additional information requested from

Defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later, the

United States shall provide written notice to Defendants and the trustee, if there is one, stating

whether or not it objects to the proposed divestitures.  If the United States provides written notice

that it does not object, the divestitures may be consummated, subject only to Defendants' limited

right to object to the sale under Section V(C) of this Final Judgment.  Absent written notice that

the United States does not object to the proposed Acquirer(s) or upon objection by the United

States, a divestiture proposed under Section IV or Section V shall not be consummated.  Upon

objection by Defendants under Section V(C), a divestiture proposed under Section V shall not be

consummated unless approved by the Court.

### VIII. **Financing**

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

### IX. **Hold Separate**

Until the divestitures required by this Final Judgment have been accomplished, Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court.  Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

### X. **Affidavits**

A.     Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Sections IV or V, AMC shall deliver to the United States an affidavit as to the fact and manner of its compliance with Sections IV or V of this Final Judgment.  Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.  Each such affidavit shall also include a description of the efforts AMC has taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective purchasers, including the limitations, if any, on such information.  Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by AMC, including limitation on information, shall be made within fourteen (14) calendar days of

-14-

receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter,

AMC shall deliver to the United States an affidavit that describes in reasonable detail all actions

Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply

with Section IX of this Final Judgment.  AMC shall deliver to the United States an affidavit

describing any changes to the efforts and actions outlined in AMC's earlier affidavits filed

pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the

Divestiture Assets until one year after such divestitures have been completed.

## XI. **Compliance Inspection**

A.      For the purposes of determining or securing compliance with this Final Judgment,

or of determining whether the Final Judgment should be modified or vacated, and subject to any

legally recognized privilege, from time to time duly authorized representatives of the United

States Department of Justice Antitrust Division ("DOJ"), including consultants and other persons

retained by the United States, shall, upon written request of an authorized representative of the

Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to

Defendants, be permitted:

(1)     access during Defendants' office hours to inspect and copy, or at plaintiffs' option, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2)     to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable

convenience of the interviewee and without restraint or interference by Defendants.

B.     Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.     No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.     If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the plaintiffs shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII. Notification

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), AMC, without providing advance notification to the DOJ, shall

not directly or indirectly acquire any assets of or any interest, including any financial, security, loan, equity or management interest, in the business of theatres exhibiting first-run, commercial movies in Cook County, Illinois; Dupage County, Illinois; Adams County, Colorado; Boulder County, Colorado; Jefferson County, Colorado; Marion County, Indiana; and Johnson County, Indiana during a ten year period.

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"),  Kerasotes, without providing advance notification to the DOJ, shall not directly or indirectly acquire any assets of or any interest, including any financial, security, loan, or equity interest, in the business of theatres exhibiting first-run, commercial movies in Cook County, Illinois during a ten year period.  Notwithstanding the preceding sentence, in no event shall Kerasotes be required to provide advance notification under this provision of any of the following activities:  (i) engaging in a sale/leaseback, developer-financed or similar transaction, or developing internally using its own or third-party financing, in each case with respect to a newly-developed theatre; or (ii) making an acquisition of not more than two percent of the outstanding voting securities of a publicly-traded company with theatres exhibiting first-run, commercial movies where such investment is made "solely for the purpose of investment" as that term is construed under 15 U.S.C. § 802.9.

Such notification shall be provided to the DOJ in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 9 of the instructions must be provided only about mainstream theatres that exhibit

first-run, commercial movies.  Notification shall be provided at least thirty (30) calendar days

prior to acquiring any such interest, and shall include, beyond what may be required by the

applicable instructions, the names of the principal representatives of the parties to the agreement

who negotiated the agreement, and any management or strategic plans discussing the proposed

transaction.  If within the 30-day period after notification, representatives of the DOJ make a

written request for additional information, Defendants shall not consummate the proposed

transaction or agreement until thirty (30) days after submitting all such additional information.

Early termination of the waiting periods in this paragraph may be requested and, where

appropriate, granted in the same manner as is applicable under the requirements and provisions of

the HSR Act and rules promulgated thereunder.  This Section shall be broadly construed and any

ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor

of filing notice.

## XIII.  No Reacquisition

AMC may not reacquire any part of the Divestiture Assets divested under this Final

Judgment during the term of this Final Judgment.

## XIV.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this

Court at any time for further orders and directions as may be necessary or appropriate to carry out

or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to

punish violations of its provisions.

## XV.  Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XVI.  Public Interest Determination

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

**Date:**   August 9, 2010

> Court approval subject to procedures
> of Antitrust Procedures and Penalties
> Act, 15 U.S.C. § 16
>
> **United States District Judge**